IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FARUQ ROBINSON on behalf of IMANI BATISTA, a minor,<br><br>                      Plaintiffs,<br><br>  v.<br><br>THE SCHOOL DISTRICT OF PHILADELPHIA, et al.,<br><br>                      Defendants. | CIVIL ACTION<br>NO. 13-6632 |

**OPINION**

**Slomsky, J.**                                                                                                          July 8, 2014

## I.     INTRODUCTION

This case arises from a physical assault by one student on another and the alleged failure of school administrators to prevent it from happening. On November 14, 2013, Faruq Robinson filed a Complaint against the School District of Philadelphia, the School Reform Commission, Annette Gittleman, Lissa Johnson, and Leonita Carr Hawkins ("Defendants"),[1] alleging civil rights violations and various state law claims on behalf of his minor daughter, Imani Batista ("Batista"). (Doc. No. 1.) Plaintiffs also named Mary Penning, Shari Jackson, and Elizabeth Ray as defendants in this case, but these individuals have not been served yet.[2]

---

[1] Annette Gittleman was the principal at the Andrew Hamilton School where Imani Batista, the victim of the assault, was a student. Lissa Johnson was Acting Assistant Superintendent, and Leonita Carr Hawkins was a school counselor. All three women work for the School District.

[2] Mary Penning was a school counselor at the Andrew Hamilton School, and Shari Jackson was a resource specialist. The Complaint avers that Elizabeth Ray was also a school employee, but Defendants believe she was a student. (Doc. No. 8 at 3 n.3.) According to Defendants, these individuals are not current School District employees. (Id. at 2 n.1.) Plaintiff has until July 15, 2014 to serve these Defendants.

On May 5, 2014, Defendants filed a Motion to Dismiss the Complaint. (Doc. No. 8.) On June 10, 2014, Plaintiffs filed a Response in Opposition. (Doc. No. 12.) Defendants' Motion is presently before the Court for disposition.[3]

## II.   BACKGROUND

The following facts are taken from the Complaint and must be accepted as true for purposes of the Motion to Dismiss. In the 2011-2012 school year, Imani Batista ("Batista") was a seventh grade student at Andrew Hamilton School in West Philadelphia. (Doc. No. 1 at ¶ 10.) During the first half of the school year, another student named Avery Brooks ("Brooks") began to bully Batista. (Id. at ¶ 11.) According to Plaintiffs, the bullying consisted of physical assaults, stalking, and physical intimidation. (Id.) Defendants knew that Brooks had a history of uncontrollable behavior, including physically assaulting other students, fighting, disobedience, and yelling at teachers and staff. (Id. at ¶ 15.) Batista told her parents, Corinthia[4] and Faruq Robinson, about the bullying. (Id. at ¶ 12.) The Robinsons reported it to a school counselor, Leonita Carr Hawkins ("Hawkins"), and the school's principal, Annette Gittleman ("Gittleman"). (Id.)

On October 20, 2011, Brooks assaulted Batista at school. (Id. at ¶ 13.) That same day, the Robinsons met with Hawkins and Gittleman in an attempt to stop the bullying, but neither Defendant took any action to correct the problem. (Id. at ¶¶ 13-14.) According to Plaintiffs, Defendants refused to take any action to ensure Batista's safety. (Id. at ¶ 16.) For instance, Defendants did not suspend, expel, or transfer Brooks to another school; nor did they change her class schedule to avoid contact with Batista. (Id.) The Robinsons made numerous trips to the

---

[3] In reaching its decision, the Court has relied on the following: the Complaint (Doc. No. 1), Defendants' Motion to Dismiss (Doc. No. 8), Plaintiffs' Response in Opposition (Doc. No. 12), and Defendants' Reply in Further Support of the Motion (Doc. No. 13).

[4] Corinthia Robinson is now deceased.

school to discuss their daughter's situation with Gittleman and Acting Assistant Superintendent, Lissa Johnson ("Johnson").  (Id. at ¶ 17.)

As a result of the ongoing bullying of Batista by Brooks, the Robinsons "demanded a meeting with school official[s] to have the behavior stopped . . . ."  (Id. at ¶ 19.)  On November 21, 2011, Defendants scheduled a meeting at the school to address the Robinsons' complaints that nothing was being done to protect their daughter from Brooks.  (Id. at ¶ 20.)  The meeting was held in a classroom, and the following individuals were present: two school counselors, Hawkins and Mary Penning ("Penning"); a resource specialist, Shari Jackson ("Jackson"); a school employee, Elizabeth Ray ("Ray"); Mrs. Robinson; Brooks' mother, Michele Parker; Brooks; and Batista.  (Id. at ¶ 21.)  During the meeting, there was only a single seat between Brooks and Batista, and no security personnel were present.  (Id. at ¶¶ 21, 22.)

During the meeting, Brooks became visibly agitated.  (Id. at ¶ 23.)  Eventually, she got out of her seat and approached Batista.  (Id.)  She repeatedly punched Batista in the head and face about seven times.  (Id.)  According to Plaintiffs, "none of the Defendants . . . did anything to restrain [Brooks] prior to or during the attack; . . . rather they sat and viewed [her] repeatedly punch Imani Batista in her head and face, leaving her mother only to attempt to physically stop the attack."  (Id.)  The assault was immediately reported to Gittleman, who was not present at the meeting.  (Id. at ¶ 24.)  The Robinsons filed a police report with the Philadelphia Police Department, and the police documented it as an assault.  (Id. at ¶ 26.)

As a result of Defendants' alleged failure to take corrective actions to prevent Brooks' assaultive behavior, Plaintiff Faruq Robinson filed the Complaint in this Court on behalf of his daughter, Batista.  He alleges that Defendants denied Batista her constitutional right to bodily integrity in violation of 42 U.S.C. § 1983 (commonly referred to as "Section 1983") (Count I).

(Id. at ¶¶ 30-38.) He also contends that Defendants' acts constitute negligence, gross negligence, and negligent hiring, retention, and training, in violation of Pennsylvania state law (Count II). (Id. at ¶¶ 39-40.) On May 5, 2014, Defendants filed a Motion to Dismiss the Complaint against them. (Doc. No. 8.) Plaintiffs oppose the Motion. (Doc. No. 12.) For reasons that follow, the Court will grant Defendants' Motion to Dismiss.

### III.  STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

When determining whether a claim is plausible, a district court may also consider any affirmative defenses raised by the moving party. "Technically, the Federal Rules of Civil Procedure require that affirmative defenses be pleaded in the answer." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (citing Fed. R. Civ. P. 12(b)). However, the so-called "Third Circuit Rule" allows affirmative defenses to be raised in a 12(b)(6) motion. Id. See also Ball v. Famiglio, 726 F.3d 448, 459 n.16 (3d Cir. 2013) cert. denied, 134 S. Ct. 1547 (U.S. 2014) ("[A] number of affirmative defenses that are not listed in Rule 12(b) [can] still be made by motion, provided that the basis of the defense [is] apparent on the face of the complaint."); Bethel v. Jendoco Const. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) ("[A]n affirmative defense may be raised on a 12(b)(6) motion if the predicate establishing the defense is apparent from the face of the complaint."). For instance, a statute of limitations defense may be raised in a motion to

5

dismiss if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson, 313 F.3d at 135 (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).  See also Eddy v. Virgin Islands Water & Power Auth., 256 F.3d 204, 210 n.3 (3d Cir. 2001) ("qualified immunity may be raised in a motion to dismiss at the pleading stage . . . ."); Hartmann v. Time, Inc., 166 F.2d 127, 140 n.3 (3d Cir. 1947) (explaining that the defense of res judicata may be raised in the answer or in a motion to dismiss).[5]

## IV.   ANALYSIS

### A.   The Individual Defendants are Entitled to Qualified Immunity Because Plaintiffs Fail to Adequately Allege That Their Conduct Violated Batista's Substantive Due Process Rights

The individual Defendants, Gittleman, Johnson, and Hawkins, argue that Plaintiffs' Complaint against them must be dismissed because they are entitled to qualified immunity. (Doc. No. 8 at 6.)  In a recent decision, the Supreme Court explained:

> The doctrine of qualified immunity protects government officials from liability for civil damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."

---

[5] In their Motion, Defendants assert that they are entitled to qualified immunity. According to the Supreme Court:

> Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery."  Accordingly, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."

Pearson v. Callahan, 555 U.S. 223, 231-32 (2009) (internal quotations omitted).  Accordingly, the Court may consider the issue of qualified immunity at this stage of the litigation.

Wood v. Moss, 134 S. Ct. 2056, 2066-67 (2014) (quoting Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011)). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) cert. denied, 133 S. Ct. 41 (2012). The Third Circuit has explained further:

> A qualified immunity inquiry is two-pronged, though courts are free to address the two elements in whichever order they deem appropriate. Normally, however, in considering a qualified immunity issue, we will ask whether a defendant's conduct violated a [plaintiff's] statutory or constitutional rights before addressing whether that law had been established at the time of the violation so that the unlawfulness of the conduct should have been apparent to an objectively reasonable official.

Halsey v. Pfeiffer, 13-1549, 2014 WL 1622769, *9 (3d Cir. Apr. 24, 2014). The individual Defendants argue that both prongs of the qualified immunity test shield them from liability. The Court will first consider whether there has been a violation of a constitutional right.

Plaintiffs contend that Defendants violated Batista's substantive due process right to bodily integrity under the "state-created danger" doctrine. This doctrine is an exception to the general rule that state actors do not have an affirmative duty to protect citizens from third parties. See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 196 (1989) ("[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."). This general "no duty" rule applies to public schools. The Third Circuit recently held that "public schools, as a general matter, do not have a constitutional duty to protect students from private actors." Morrow v. Balaski, 719 F.3d 160, 170 (3d Cir. 2013) cert. denied, 134 S. Ct. 824 (2013). The state-created danger theory, however, is an exception to this general rule and provides an avenue by which plaintiffs can establish Section 1983 liability.

Under this doctrine, "liability may attach where the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." Id. at 177 (original emphasis) (citing Kneipp v. Tedder, 95 F.3d 1199, 1205 (3d Cir. 1996)).

In the Third Circuit, to prevail on a state-created danger theory, Plaintiffs must prove each of the following four elements:

1) the harm ultimately caused was foreseeable and fairly direct;

2) a state actor acted with a degree of culpability that shocks the conscience;

3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Id. (citing Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006)). Defendants assert that the facts set forth in the Complaint do not satisfy any of these elements. Because Plaintiffs do not satisfy the fourth prong of the state-created danger test, they have not established a constitutional violation, and the individual Defendants are therefore entitled to qualified immunity.

### 1. The Individual Defendants Did Not Affirmatively Use Their Authority to Create or Enhance a Danger to Batista

The fourth element of a state-created danger claim will be satisfied if the individual Defendants affirmatively used their authority in a way that created a danger to Batista or rendered her more vulnerable to danger than had they not acted at all. Morrow, 719 F.3d at 177. Aside from demonstrating "a specific and deliberate exercise of state authority," Plaintiffs must also establish "a direct causal relationship between the affirmative act of the state and plaintiff's harm." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 432 (3d Cir. 2006) (explaining that "the fourth

8

element is satisfied where the state's action was the 'but for cause' of the danger faced by the plaintiff.").

Plaintiffs contend that the individual Defendants put Batista in a dangerous situation by compelling her to attend a meeting where she was in close proximity to her attacker, Brooks. (Doc. No. 12 at 8.) According to Plaintiffs, if not for Defendants' actions, Batista would not have been in harm's way. (Id.) Defendants argue that their conduct did not affirmatively cause Batista harm or render her more susceptible to danger. The Court agrees with the position of Defendants.

As an initial matter, the November 21, 2011 meeting was only held after the Robinsons "demanded a meeting with school official[s]." (Doc. No. 1 at ¶ 19) (emphasis added). Despite Plaintiffs' present contentions, nowhere does the Complaint allege that the individual Defendants compelled Batista to attend the meeting or compelled her to sit one seat away from her attacker. Moreover, the case Plaintiffs rely on, Maxwell ex rel. Maxwell v. Sch. Dist. of City of Philadelphia, 53 F. Supp. 2d 787, 793 (E.D. Pa. 1999), is wholly distinguishable from the case at hand.

In Maxwell, the district court denied a substitute teacher's motion to dismiss upon finding that the plaintiff adequately alleged a Section 1983 claim under the state-created danger theory. There, a special education student was raped by two classmates in the back of a locked classroom, over which the substitute teacher was presiding. Id. at 789. The court found that the school district defendants placed the student directly in harm's way by locking the classroom doors and by the substitute teacher announcing to the class: "I don't care what you do as long as you do not bother me." Id. at 793. Because the defendants affirmatively used their authority to

enhance the risk of harm to the student, the fourth element of the state-created danger test was satisfied.

Similar allegations are not present in this case. For instance, Plaintiffs do not allege that the classroom doors were locked and thereby prevented Batista from leaving the meeting on November 21, 2011. There are no allegations that any Defendant made a statement that effectively sanctioned Brooks' assaultive behavior. Finally, there were six (6) adults present at the meeting, including both students' mothers. For these reasons, the present scenario differs markedly from the dangerous situation that existed in Maxwell.

The decision in Pagan v. City of Philadelphia, No. 11-5178, 2012 WL 1965386 (E.D. Pa. May 31, 2012) is more persuasive here. In Pagan, a special needs student and his parents brought a Section 1983 claim against the school district and others, after the student was physically assaulted by a classmate in a school stairwell while re-entering the building after a fire drill. The court granted the defendants' motion to dismiss because the complaint did not sufficiently allege that the school officials affirmatively acted to create a danger to the student or render him more vulnerable to danger. Id. at *7. In determining that the fourth element of the state-created danger test had not been met, the court reasoned as follows:

> Plaintiffs also argue the fire drill itself is an affirmative act that increased the risk of harm to Pagan because school officials required him to go into an unsupervised area of the school building, i.e., the stairwell. This Court disagrees. Although school officials may have acted affirmatively by requiring students to exit and re-enter the school as part of the fire drill, the Complaint as a whole makes clear that it is Defendants' failures to act that allegedly created the dangerous situation for Pagan. The Complaint alleges Defendants had a policy of failing to provide sufficient numbers of security and other personnel in the school's hallways and stairwells, and of failing to supervise students during fire drills. The Complaint further alleges that, pursuant to these policies, Defendants "failed to provide any proper or sufficient protection and/or adult supervision of any kind to the students including, but not limited to, [Pagan] in the school and/or stairwells as the students re-entered the building after the fire drill" on March 12, 2009. These allegations, which fault Defendants for leaving Pagan and other students

Case 2:13-cv-06632-JHS Document 14 Filed 07/08/14 Page 11 of 16

> "unsupervised and unprotected," reveal it is not Defendants' affirmative conduct in holding a fire drill—as they were required to do under state law—but their failure to provide adequate security in the stairwell that is alleged to have increased the risk of harm to Pagan.
>
> Moreover, the Complaint does not support the plausible inference that the fire drill "create[d] an opportunity that otherwise would not have existed for [harm] to occur." To be sure, the fire drill created an occasion for students, teachers, and other school personnel alike to exit and re-enter the school building en masse via the hallways and stairwells where Defendants allegedly knew the security was inadequate. Presumably, however, students also had occasion to be in these unsupervised areas of the school at other times during the school day, such as upon arrival at school, between classes, or at the end of the day. Indeed, the Complaint alleges Pagan had previously been injured by another student in the stairwell. Although the fire drill may have precipitated Pagan's presence in the stairwell at the time of the attack, it cannot be said to have created an opportunity for harm that would not have existed at other times during the school day.

Id. at *6-7 (internal citations omitted).

The Court here is equally unpersuaded by Plaintiffs' contentions that the individual Defendants affirmatively placed Batista in harm's way by compelling her to attend a meeting where her attacker would be present. First, as already noted, there are no allegations in the Complaint that any Defendant compelled Batista to attend the meeting that her parents requested, and it would be futile to allow Plaintiffs to amend the Complaint to include this fact. Similar to the situation in Pagan, even if the individual Defendants acted affirmatively by requiring Batista to attend the meeting on November 21, 2011, the Complaint as a whole makes clear that it is their failure to act that allegedly created the dangerous situation for Batista. For example, the Complaint alleges that "none of the Defendants . . . did anything to restrain [Brooks] prior to or during the attack; Defendants had a duty to protect Imani Batista at all times during the meetings, . . . by restraining Avery Brooks, . . . rather they sat and viewed Avery Brooks repeatedly punch Imani Batista in her head and face . . . ." (Doc. No. 1 at ¶ 23.) Here, similar to the plaintiffs in Pagan, Plaintiffs repeatedly criticize the lack of security in the classroom during the meeting and

11

within the school in general.  (Id. at ¶¶ 18, 20, 21.)  The Complaint is also replete with allegations that the Defendants failed to take "corrective actions" before, after, or during the assault.  (Id. at ¶¶ 14, 16, 25, 27, 28, 29.)

Like the allegations in Pagan, these factual averments reveal that the individual Defendants' affirmative conduct in holding a meeting did not increase the risk of harm to Batista.  Instead, Plaintiffs' are actually challenging their failure to protect Batista from Brooks.  See Morrow, 719 F.3d at 178-79 ("Here again, the Complaint attempts to morph passive inaction into affirmative acts.  However, merely restating the Defendants' inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct."); Kaucher, 455 F.3d at 433 ("[Plaintiffs] frame their claim in terms of actions affirmatively creating dangerous conditions and affirmatively misrepresenting dangers.  But at base [sic], both aspects of their claim allege failures to take actions sufficient to prevent [their] infections.").  Because the fourth element of a state-created danger claim requires an affirmative act, "these allegations of omissions are insufficient to trigger substantive due process liability."  Kaucher, 455 F.3d at 435.

Furthermore, although the November 21, 2011 meeting may have precipitated Batista's presence in the classroom at the time of the attack, it cannot be said to have created an opportunity for harm that would not have existed at other times during the school day when Brooks was nearby.  Because Plaintiffs cannot allege that the individually named Defendants affirmatively acted to create a risk of danger that otherwise would not have existed, their state-created danger claim necessarily fails under the fourth element of the test.[6]  Thus, Plaintiffs have not established a constitutional violation.  The failure to allege a constitutional violation is fatal

---

[6] Because Plaintiffs' cannot satisfy the fourth element of a state-created danger claim, the Court need not address Defendants' arguments on the remaining three elements.

to their Section 1983 claim. For this reason alone, Plaintiffs cannot maintain a claim against the individually named Defendants.[7]

### B. The Section 1983 Claim Against the School District and the School Reform Commission Will Be Dismissed

Defendants also argue that the Section 1983 claim against the School District and the School Reform Commission must be dismissed because Plaintiffs have not demonstrated that a constitutional violation occurred. (Doc. No. 8 at 19.) As discussed above, the Court agrees that Plaintiffs' allegations do not plausibly establish a substantive due process violation. For this reason, the claim will be dismissed.

Furthermore, it is well-established that governmental entities like these Defendants "cannot be liable under a theory of respondeat superior or vicarious liability" for an Eighth

---

[7] Because there is no constitutional violation, the individual Defendants are entitled to qualified immunity. Although it is unnecessary for the Court to reach the issue of whether there was a clearly established statutory or constitutional right about which a reasonable person would have known, the Court will nevertheless do so, even though Plaintiffs did not address this second prong of Defendants' qualified immunity argument in their Response to the Motion to Dismiss. As previously noted, qualified immunity will shield state officials from liability as long as those officials reasonably believe that their conduct complies with the law. Sharp, 669 F.3d at 159. In this case, the relevant question for qualified immunity purposes is this: Could the individually named Defendants reasonably have believed that holding a meeting to address the bullying by Brooks, at the request of Batista's parents, would constitute a constitutional violation? The Court has been unable to locate any Third Circuit precedent or "a robust consensus of cases" that would have put Defendants on notice that their conduct violated Batista's substantive due process right to bodily integrity. See, Lane v. Franks, No. 13-483, 2014 WL 2765285, *12 (U.S. June 19, 2014) (holding that because the constitutional question at issue "was not 'beyond debate'" when the defendant acted, he was entitled to qualified immunity); Plumhoff v. Rickard, 134 S. Ct. 2012, 2024 (2014) (holding that the defendants were entitled to qualified immunity because the plaintiff failed to identify a controlling case or a robust consensus of cases that could be said to have clearly established the unconstitutionality of using lethal force to end a high-speed car chase). Furthermore, given the nature of the dispute, no reasonable person would have believed that it would constitute a constitutional violation to have both students present at the meeting. Lastly, it is well-established that public schools "do not have a constitutional duty to protect students from private actors." Morrow, 719 F.3d at 170. For these additional reasons, the individually named Defendants are entitled to qualified immunity.

Amendment violation under Section 1983. <u>A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.</u>, 372 F.3d 572, 580 (3d Cir. 2004) (citing <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 691-92 (1978)).  In order for the School District or the School Reform Commission to be held liable, Plaintiffs "must identify a policy or custom . . . that caused the constitutional violation."  <u>Id.</u> (citing <u>Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown</u>, 520 U.S. 397, 403 (1997)).  According to the Third Circuit:

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict."  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law."

<u>Natale v. Camden Cnty. Corr. Facility</u>, 318 F.3d 575, 584 (3d Cir. 2003) (internal quotations omitted).

In the Complaint, Plaintiffs contend that the School District and the School Reform Commission exercised a pattern and practice of not providing sufficient security.  (Doc. No. 1 at ¶ 35.)  Plaintiffs also contend that, pursuant to a practice, policy, and custom, these Defendants refused to contact the police following attacks by violent students.  (<u>Id.</u> at ¶ 37.)  Plaintiffs have not alleged facts sufficient to support these bald allegations.  Moreover, as previously discussed, Plaintiffs cannot maintain a state-created danger claim based on Defendants' inaction.  Instead, Plaintiffs must demonstrate that these Defendants took some affirmative action to create an increased risk of harm to Batista.  Allegations that the School District and the School Reform Commission did not provide enough security or did not call the police are insufficient.  For these reasons, Plaintiffs Section 1983 claim against these Defendants will be dismissed.

### C.     The State Law Claims Against the Individual Defendants Will be Dismissed

In Count II of the Complaint, Plaintiffs assert state law claims against the individually named Defendants, including negligence, gross negligence, negligent hiring, negligent retention,

and negligent training.  Defendants argue that these claims are barred under Pennsylvania's Political Subdivisions Tort Claims Act, 42 Pa. Cons. Stat. Ann. § 8541, et seq. ("Tort Claims Act").[8]  Under this governmental immunity statute:

> An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties <u>only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter</u>.

Id. at § 8545 (emphasis added).

The Pennsylvania Supreme Court has explained:

> [L]iability for damages on account of an injury to person or property will be imposed on a local agency if two conditions[9] are met and <u>if the injury occurred as a result of one of eight delineated acts</u>.

Jones v. Se. Pennsylvania Transp. Auth., 772 A.2d 435, 439-40 (2001) (emphasis added).

The eight delineated acts constitute limited exceptions to the general rule that local government agencies are immune from suit.  If a plaintiff's injury did not involve one of the following situations, then governmental immunity applies: (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic controls, and street lighting;

---

[8] Plaintiffs did not address this argument in their Response to Defendants' Motion to Dismiss.  For this reason alone, the Court could dismiss the state law claims asserted against Defendants.

[9] The two conditions are:

> (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

> (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42 Pa. Cons. Stat. Ann. § 8542(a).

(5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody, or control of animals. 42 Pa. Cons. Stat. Ann. § 8542(b).  Furthermore, the Pennsylvania Supreme Court has instructed that these exceptions must be strictly construed.  <u>Jones</u>, 772 A.2d at 440.  It is clear from the Complaint that Plaintiffs' various negligence claims do not fall within any of the enumerated exceptions to governmental immunity.  Therefore, the Tort Claims Act bars Plaintiffs' state law claims against the individually named Defendants, and they cannot be held liable for Batista's injuries.

### V.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be granted.  In failing to allege a constitutional violation, Plaintiffs cannot maintain a Section 1983 claim against the individually named Defendants, the School District, or the School Reform Commission.  This failure also entitles the individual Defendants to qualified immunity.  Furthermore, the state law claims against the individual Defendants will be dismissed because these Defendants are entitled to governmental immunity under Pennsylvania law.  Because additional named Defendants have yet to be served, however, the Complaint will not be dismissed in its entirety.